**FILED**

2012 Feb-28 PM 04:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| SECURITAS SECURITY SERVICES USA, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. _____ |
| v. ) | |
| ) | |
| JAMES WHITT d/b/a SECURITY ASSOCIATES ) | |
| OF ALABAMA, ) | **Jury Trial Demanded** |
| ) | |
| Defendant. ) | |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff SECURITAS SECURITY SERVICES USA, INC. ("Securitas" or "Plaintiff"),

by its attorneys, brings this action against Defendants JAMES WHITT ("Whitt" or "Defendant")

and alleges as follows:

## INTRODUCTION

### 1.

This is an action brought by Securitas to recover damages and to prevent Whitt's

wrongful acts against Securitas. This lawsuit seeks to prevent Whitt, a former Branch Manager

for Securitas, from breaching the terms of a Non-Disclosure/Non-Competition/Non-Solicitation

Agreement executed by Whitt on or about March 23, 2010 ("Agreement," attached hereto as

Exhibit A) and from tortiously interfering with Securitas' contractual and business relations.

## PARTIES, JURISDICTION AND VENUE

### 2.

Plaintiff Securitas is a Delaware corporation with its principal place of business in

Westlake Village, California.

3.

Defendant James Whitt resides at 338 N. Seneca Drive, Trinity, Alabama 35673. Whitt was formerly employed by Securitas and worked out of a Securitas office in Madison, Alabama. A substantial portion of the acts complained of herein took place in and around Huntsville, Alabama.

4.

Whitt is presently conducting business under the business name "Security Associates of Alabama." Whitt has registered the name "Security Associates of Alabama" as a limited liability company with the Alabama Secretary of State but, upon information and belief, has failed to take any steps to organize Security Associates of Alabama as a limited liability company or any other business entity under the laws of the State of Alabama or any other jurisdiction.

5.

This Court has original jurisdiction of this action under 28 U.S.C. § 1332 because the parties are citizens of different states and the matter in controversy exceeds $75,000.00, excluding interest and costs. This Court has personal jurisdiction over Whitt.

6.

Venue is proper in this District under 28 U.S.C. § 1391(a) because Whitt is a resident of the Northern District of Alabama, he has breached and threatens to breach his contractual duties to Securitas in this District, and a substantial part of the events giving rise to these claims occurred in this District.

## BACKGROUND

**A.    Securitas' Business.**

7.

Securitas is an industry leader in the business of providing security services to companies in a wide variety of industries and services.  Through its extensive network of affiliated service providers, Securitas offers a variety of security solutions to companies throughout the world, including uniformed security officers, patrols and inspections, access control, concierge and receptionist services, security console operators, alarm response, and specialized client requested services.

8.

Securitas negotiates with its customers on an individual basis regarding the rates that it charges for its services and the scope of the services that it provides.  Securitas' agreements with its customers are memorialized in written agreements setting forth the services that Securitas agrees to provide and the compensation that Securitas' customers agree to pay for those services.

**B.    Whitt's Employment with Securitas.**

9.

On April 4, 2002, Whitt commenced his employment with a predecessor company of Securitas (Pinkerton's, Inc.) as a Human Resources Specialist.  Whitt became an employee of Securitas in 2003 when Pinkerton's Inc. and several related companies merged to form Securitas.

10.

In July, 2004, Securitas promoted Whitt to the position of Branch Manager of its Huntsville, Alabama branch.  In this role, Whitt worked at a facility located at 3776 Sullivan Street, Suite G, Madison, Alabama 35758.

11.

Securitas' business model is highly dependent upon customer relationships. As a Branch Manager, Whitt was responsible for developing relationships with current and prospective customers of Securitas in northern Alabama, for selling Securitas' services to those customers, and for managing Securitas' relationships with those customers.

12.

To that end, during his employment with Securitas, Securitas introduced Whitt to numerous customers, including but not limited to Cullman Yutaka Technologies ("Yutaka") in Cullman, Alabama; Heat Transfer Products Group ("HTP") in Scottsboro, Alabama; and Nichols Aluminum ("Nichols") in Decatur, Alabama.

13.

Securitas also funded Whitt's efforts toward developing his relationship with these and other customers. As reflected in Whitt's expense reports, throughout his employment with Securitas, Whitt obtained more than $89,000 from Securitas as reimbursement for Whitt's purported business and marketing expenses.

C.    **Securitas' Trade Secrets and Confidential Information.**

14.

To facilitate Whitt's efforts in developing relationships with customers, Securitas provided Whitt access to its trade secrets and other confidential and/or proprietary business information, including highly confidential information regarding Securitas' interactions with its customers, customer billing and payroll information, and data reflecting customer preferences and service history. Securitas developed and maintained these trade secrets and other confidential and/or proprietary information at considerable cost and effort to Securitas using

4

information gleaned from its long-term relationships with its customers. The development, maintenance and confidentiality of this information are essential to Securitas' business.

15.

Securitas treats its confidential information and trade secrets as confidential and makes reasonable efforts to maintain the secrecy and confidentiality of that information. For example, Securitas maintains data regarding its interactions with its customers, customer billing and payroll information, and customer preferences and service histories in limited access databases, including but not limited to its Securitas Service Excellence, Cypress Financial, and SAFES databases. The databases are accessible only to a handful of employees who have a business need for the information stored on such databases.

16.

In addition, Securitas requires its employees to sign Non-Disclosure/Non-Competition/Non-Solicitation Agreements like the Agreement that Whitt signed on or about March 23, 2010. As an employee of Pinkerton's, Inc. and then Securitas, Whitt was a party to no less than three other employment agreements before executing the Agreement on or about March 23, 2010. Each of the previous agreements between Whitt and Securitas also contained restrictions similar to those in the Agreement.

17.

Securitas' confidential information and trade secrets derive economic and competitive value from not being generally known to Securitas' competitors or other third parties. For example, if a Securitas competitor obtained information about the preferences and service histories of Securitas' customers, Securitas' revenues or profit margins, the rates that Securitas charges its customers, or information about the compensation that Securitas pays its employees

and contractors who provide security services to customers, a competitor could use such information to solicit Securitas' customers and undercut Securitas' prices.

**D.     Whitt's Agreement with Securitas.**

18.

Whitt executed the Agreement on or about March 23, 2010. In the Agreement, Whitt promised that, for a one-year period following the termination of his employment with Securitas, he would not engage in specified competitive activities.

19.

Specifically, in Section II of the Agreement, Whitt agreed as follows:

> 2.2.   <u>Non-Competition</u>: The parties agree that Employee may be employed with other security companies after termination of Employee's employment with Securitas USA. However, because of Employee's receipt and use of confidential information as identified in paragraphs 1.4 and 3.1 of this Agreement, Employee agrees that, during Employee's employment, and for a period of one (1) year following Employee's last date of employment with Securitas USA, Employee will not:
>
> a) provide security services, directly or indirectly, individually or for another entity, to any person, customer or client which Employee serviced during the last year of Employee's employment with Securitas USA; and/or
>
> b) provide security services, directly or indirectly, individually or for another entity, to any person, customer or potential client within a fifty (50) mile radius of the office in which Employee was based during his/her employment with Securitas USA.
>
> 2.3    <u>Non-Solicitation</u>: Employee agrees that, during Employee's employment, and for one (1) year following Employee's last date of employment with Securitas USA USA [*sic*], Employee will not:
>
> a) engage in any conduct or communications, directly or indirectly, designed or intended to induce any Securitas USA customer/client or potential client that Employee

serviced or solicited during the last year of Employee's employment with Securitas USA, to discontinue using Securitas USA's services or to employ the services of a security provider other than Securitas USA; and

b) engage in any conduct or communications, directly or indirectly, designed or intended to induce any Securitas USA customer/client or potential client that Employee serviced or solicited within a fifty (50) mile radius of the office in which Employee was based during his/her employment with Securitas USA to discontinue or to employ the services of a security provider other than Securitas USA; and

c) engage in any conduct or communications, directly or indirectly, designed or intended to induce any Securitas USA employee to terminate his or her employment with Securitas USA in order to compete with Securitas USA's business interests.

2.4    After Employee's termination from Securitas USA, Employee further agrees to refrain from maintaining a business address or telephone listing, within the fifty (50) mile radius of the office in which Employee was based during his/her employment with Securitas USA, for the purpose soliciting business in the security industry.

(Ex. A §§ 2.2 to 2.4.)

20.

Whitt also agreed to refrain from using Securitas' confidential information and trade secrets.  Specifically, in Section III of the Agreement, Whitt agreed as follows:

3.1.    Non-Disclosure of Confidential Information/Trade Secrets/Securitas USA Property: Employee agrees that the following materials are considered Securitas USA confidential property and may also constitute trade secrets: all customer and/or client lists, pricing models, business models, business plans and strategies, lists of sales leads, forms, notes, any computer/electronic-generated information, memoranda, records, price lists, leads, drawings, files, papers relating to Securitas USA's operations and methods of conducting business, designs, processes, methods of marketing, all training materials created by Securitas USA, all equipment and any other

written information obtained by Employee from Securitas USA or from any officer or other employee of Securitas USA. Employee acknowledges and agrees that, during Employee's employment, Securitas USA will provide Employee access to and Employee will make use of Securitas USA's confidential information and/or trade secrets, as defined by the Uniform Trade Secrets Act. Employee agrees, in order for Securitas USA to protect its business interests, including goodwill, during Employee's employment and for a period of two (2) years after the termination of Employee's employment with Securitas USA:

a) to never use any Securitas USA property in a manner that may undermine any of Securitas USA's business operations, and to maintain the confidentiality of all information designated as such, and/or designated as a trade secret;

b) keep such information confidential and not use such confidential information and/or trade secrets to engage in activities in competition with Securitas USA; and

c) to return all Securitas USA property to Securitas USA upon request, including, but not limited to, any and all documents reflecting confidential information and/or Securitas USA's trade secrets.

(Ex. A § 3.1.)

21.

In addition, Whitt agreed that Securitas will be irreparably harmed by any violation or threatened violation of this Agreement by Whitt and that Securitas shall be entitled to a court-ordered injunction prohibiting Whitt from any violation or threatened violation of this Agreement, and any other remedies to which Securitas may be otherwise entitled.  (Ex A § 4.2)

22.

The non-competition, non-solicitation, and non-disclosure covenants in the Agreement served several legitimate business purposes for Securitas, including but not limited to

- protecting valuable confidential business information and trade secrets;

8

- protecting substantial relationships with specific prospective or existing customers; and

- protecting Securitas' goodwill and marketing with respect to customers serviced by Whitt.

23.

The restrictions in the non-competition, non-solicitation, and non-disclosure covenants in the Agreement are tailored to and necessary to protect Securitas' legitimate business interests, including but not limited to protecting its valuable confidential and trade secret information and its long-standing business relationships.

**E.      Whitt's Violation of the Agreement and Alabama Law.**

24.

On Sunday, August 14, 2011, Whitt informed Ed Eldridge, Vice President of Human Resources, and Louis Sturdivant, Area Vice President, that he was resigning, effective in two weeks, "to move onto the next chapter of [his] life."  Whitt remained employed by Securitas through his two-week notice period and ended his employment with Securitas on August 26, 2011.

25.

Notwithstanding his obligations in the Agreement, almost immediately following his resignation from Securitas, Whitt obtained employment with Security Management of South Carolina ("Security Management"), a direct competitor of Securitas.

26.

As an employee of Security Management, Whitt provided security services within a 50-mile radius of Securitas' office in Huntsville, Alabama, in violation of the Agreement.  Whitt

also began soliciting and servicing, on behalf of Security Management, the same customers of Securitas that he had previously serviced for Securitas, also in violation of the Agreement.

27.

For example, upon information and belief, shortly after his hire by Security Management, Whitt began soliciting and servicing (or assisting other Security Management employees in assisting and servicing) Yutaka on behalf of Security Management.  As a result, in early November 2011, Yutaka canceled its contract with Securitas and hired Security Management to provide the same security services that Securitas previously had provided Yutaka at its facility in Cullman, Alabama.  Upon information and belief, Whitt now services the same account under the business name "Security Associates of Alabama."

28.

Security Management terminated Whitt's employment in November or December, 2011. Whitt nevertheless continues to compete against Securitas, either individually or on behalf of a business or other entity, by covertly providing security services within a 50-mile radius of Securitas' office in Huntsville, Alabama – all the while representing to Securitas that he is unemployed and unaffiliated with any company that competes with Securitas in the security industry.  Moreover, Whitt covertly continues to solicit and service the same customers of Securitas that he had previously serviced for Securitas within the last twelve months of his employment with Securitas.

29.

For example, on or about January 1, 2012, HTP canceled its contract with Securitas. While completing payroll for Securitas' security officers assigned to the HTP account, Securitas discovered that Whitt or a business or entity with which Whitt is connected now provides the

same services that Securitas previously had provided to HTP and that Whitt continues to service the HTP account as a "Branch Manager."

30.

Upon information and belief, Whitt has also solicited employees of Securitas to terminate their employment with Securitas and obtain employment with a competing entity. As a result, Whitt or an entity that he owns now employs the same individuals that Securitas previously employed at the Yutaka and HTP facilities where it provided security services.

31.

In addition, Nichols recently canceled its contract with Securitas effective March 11, 2012 and indicated that it intends to move its business to Security Associates of Alabama notwithstanding Whitt's non-compete obligations to Securitas.

32.

By providing security services within a 50-mile radius of Securitas' office in Huntsville, Alabama, by soliciting and servicing the same customers of Securitas that he had previously serviced for Securitas during the last twelve months of his employment with Securitas, and by soliciting Securitas employees to obtain employment with a competing business, Whitt has violated and continues to violate the Agreement.

33.

Securitas has suffered and will continue to suffer immediate irreparable harm to its business interests, customer relationships, and goodwill if Whitt is not enjoined from breaching the Agreement and from interfering with Securitas's contractual and business relations.

34.

In an effort to avoid litigation, on January 11, 2012, Securitas, through its counsel, sent Whitt a letter, which is attached hereto as Exhibit B, reminding him of his obligations under the

Agreement and demanding that he immediately cease and desist from engaging in activities that violate the Agreement.

35.

In response to Securitas' correspondence, Whitt sent an e-mail to Securitas' counsel, which is attached hereto as Exhibit C, stating that he is no longer employed by Security Management and falsely representing that he had not violated his contractual obligations to Securitas. As demonstrated by Exhibit C, Whitt's personal e-mail address is jamesdwhitt@bellsouth.net.

36.

To obtain further clarification regarding Whitt's employment and activities, Securitas, through counsel, sent additional correspondence to Whitt on January 19, 2012, which is attached hereto as Exhibit D, inquiring further about Whitt's activities.

37.

In response by e-mail on January 23, 2012, which is attached hereto as Exhibit E, Whitt admitted that Security Management took over security services for Yutaka during his employment with Security Management and that he had communicated on several occasions with at least one agent or employee of HTP. Nevertheless, Whitt represented that he was unemployed, thereby concealing his continuing violations of the Agreement.

38.

In a final attempt to avoid litigation, on January 31, 2012, Securitas, through its counsel, sent Whitt another e-mail, which is attached hereto as Exhibit F. In its final communication to Whitt, Securitas again reminded Whitt of his obligations to Securitas and inquired further about his representations in his January 23 e-mail.

39.

By response dated February 2, 2012, which is attached hereto as Exhibit G, Whitt again misrepresented his actions and falsely stated that he is not and has not been affiliated with any company that provides services in the security industry since the termination of his employment with Security Management.

40.

Through his misrepresentations, Whitt has attempted to conceal his wrongful conduct and continuing breaches of the Agreement, thereby thwarting Securitas in its efforts to obtain truthful information about the extent of Whitt's wrongful actions.

## CAUSES OF ACTION

## COUNT I:  BREACH OF CONTRACT

41.

Securitas incorporates Paragraphs 1 to 40 above as if fully restated herein.

42.

Whitt has a continuing obligation to abide by the terms of his Agreement and the restrictive covenants contained therein.

43.

Securitas introduced Whitt to its customers and expended substantial time, labor, and money to develop its relationships with its customers through Whitt.

44.

Securitas also provided Whitt with access to trade secrets and other confidential and/or proprietary information regarding its customers and business operations that it gathered, compiled, and otherwise created through the expenditure of substantial time, labor, skill, and money.

45.

The restrictive covenants in the Agreement are reasonably necessary for the protection of Securitas' legitimate business interests, including but not limited to:

- protecting valuable confidential business information and trade secrets;

- protecting substantial relationships with specific prospective or existing customers; and

- protecting Securitas' goodwill and marketing with respect to customers serviced by Whitt.

46.

The Agreement was supported by good and valuable consideration to which Whitt otherwise would not have been entitled absent his execution of the Agreement.

47.

Whitt's obligations under the Agreement are reasonable in terms of duration and activities restricted and do not impose a greater restraint than is necessary to protect Securitas' legitimate business interests.

48.

Pursuant to the non-competition provision of the Agreement (Section 2.2), Whitt is prohibited, for a period of one year following his last date of employment with Securitas, from: (a) providing security services, directly or indirectly, individually or for another entity, to any person, customer or client which Whitt serviced during the last year of his employment with Securitas; and (b) providing security services, directly or indirectly, individually or for another entity, to any person, customer or potential client within a fifty mile radius of the office in which Whitt was based during his employment with Securitas.

49.

Pursuant to the non-solicitation provision of the Agreement (Section 2.3), Whitt is prohibited, for a period of one year following his last date of employment with Securitas, from: (a) engaging in any conduct or communications, directly or indirectly, designed or intended to induce any Securitas customer/client or potential client that Whitt serviced or solicited during the last year of his employment with Securitas, to discontinue using Securitas services or to employ the services of a security provider other than Securitas; (b) engaging in any conduct or communications, directly or indirectly, designed or intended to induce any Securitas customer/client or potential client that Whitt serviced or solicited within a fifty mile radius of the office in which Whitt was based during his employment with Securitas to discontinue or to employ the services of a security provider other than Securitas; and (c) engaging in any conduct or communications, directly or indirectly, designed or intended to induce any Securitas employee to terminate his or her employment with Securitas in order to compete with Securitas' business interests.

50.

Moreover, pursuant to the non-disclosure provision of the Agreement (Section 3.1), Whitt is prohibited from using or disclosing Securitas' trade secrets and confidential and/or proprietary information.

51.

Whitt has breached and continues to breach the Agreement by providing security services within fifty miles of the Securitas facility where he was employed by Securitas and by soliciting and servicing Securitas' customers that he previously serviced on behalf of Securitas during the last year of his employment with Securitas and by soliciting Securitas' employees to terminate their employment with Securitas and obtain employment with a competitor.

52.

As a direct and proximate result of Whitt's breaches of the Agreement, Securitas has suffered and will continue to suffer harm and is entitled to recover damages against Whitt.

53.

Unless and until Whitt is enjoined by this Court, as a direct and proximate result of Whitt's breaches of the Agreement, Securitas has suffered and will continue to suffer irreparable harm.

54.

Securitas has no adequate remedy at law.

## COUNT II:  TORTIOUS INTERFERENCE WITH CONTRACTUAL AND BUSINESS RELATIONS

55.

Securitas incorporates Paragraphs 1 through 54 above as if fully restated herein.

56.

Securitas has existing and prospective relationships with numerous customers.

57.

Whitt had knowledge of these existing customer relationships.

58.

Whitt has interfered and continues to interfere with Securitas' relationships with its existing customers by soliciting those customers to discontinue their business with Securitas and/or to purchase from Whitt or an entity or business with which Whitt is affiliated the same services that they previously purchased or are currently purchasing from Securitas.

59.

Whitt's actions are without privilege or justification.

60.

As a direct and proximate result of these actions, Securitas has suffered and continues to suffer harm and is entitled to recover damages against Whitt.

61.

Unless and until Whitt is enjoined by this Court, Whitt's tortious interference with Securitas' contractual and business relations will cause Securitas substantial, immediate, and irreparable harm, including but not limited to the loss of Securitas' customers and the loss of Securitas' opportunity to rightfully gain from its confidential business information, customer relationships, and goodwill.

62.

Securitas has no adequate remedy at law for this actual and threatened injury.

63.

Whitt's conduct described above is willful and malicious, such that an award of exemplary damages is warranted.

**PRAYER FOR RELIEF**

WHEREFORE, Securitas respectfully requests the Court:

1.  Grant Securitas a temporary restraining order, a preliminary injunction, and a permanent injunction preventing Whitt, for a period of one year from the date of entry of injunctive relief, from: (a) providing security services, directly or indirectly, individually or for another entity, to any person, customer or client

which Whitt serviced during the last year of his employment with Securitas and/or; (b) providing security services, directly or indirectly, individually or for another entity, to any person, customer or potential client within a fifty (50) mile radius of the office in which Whitt was based during his employment with Securitas.

2.     Grant Securitas a temporary restraining order, a preliminary injunction, and a permanent injunction preventing Whitt, for a period of one year from the date of entry of injunctive relief, from: (a) engaging in any conduct or communications, directly or indirectly, designed or intended to induce any Securitas customer/client or potential client that Whitt serviced or solicited during the last year of his employment with Securitas, to discontinue using Securitas' services or to employ the services of a security provider other than Securitas; and/or (b) engaging in any conduct or communications, directly or indirectly, designed or intended to induce any Securitas customer/client or potential client that Whitt serviced or solicited within a fifty (50) mile radius of the office in which he was based during his employment with Securitas to discontinue or to employ the services of a security provider other than Securitas; and/or (c) engaging in any conduct or communications, directly or indirectly, designed or intended to induce any Securitas employee to terminate his or her employment with Securitas in order to compete with Securitas's business interests.

3.     Grant Securitas a temporary restraining order, a preliminary injunction, and a permanent injunction preventing Whitt from using or disclosing Securitas' trade secrets and confidential and/or proprietary information.

4.      Enter judgment in favor of Securitas and against Whitt for actual damages caused by Whitt's actions in an amount to be proven at trial and exemplary damages in an amount to be determined by the enlightened conscience of the jury;

5.      Award Securitas pre-judgment and post-judgment interest against Whitt in an amount to be determined at trial;

6.      Award Securitas all costs associated with this proceeding as well as reasonable attorneys' fees; and

7.      Award Securitas all other and further relief as the Court deems just and proper.

Respectfully submitted,

SECURITAS SECURITY SERVICES USA, INC.

By  /s Stephanie H. Mays
Stephanie H. Mays
Alabama Bar No. asb-9005-e68m
SMays@maynardcooper.com
MAYNARD COOPER & GALE P.C.
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, Alabama 35203
Telephone: (205) 254-1844
Facsimile: (205) 254-1999


Frederick T. Smith
Georgia Bar No. 657575
fsmith@seyfarth.com
Daniel P. Hart
Georgia Bar No. 141679
dhart@seyfarth.com
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E.
Suite 2500
Atlanta, Georgia 30309-3962
Telephone: (404) 885-1500
Facsimile: (404) 892-7056

Lead Counsel for Defendant


Date: February 28, 2012

**PLEASE SERVE DEFENDANT JAMES WHITT AT THE FOLLOWING ADDRESS:**

James Whitt
338 N. Seneca Drive
Trinity, Alabama 35673

14141024v.1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have on this the 28th day of February, 2012, served a copy of the above on all parties to this proceeding by electronic mail and by placing a copy of same in the United States Mail, postage prepaid, to the following:

James Whitt
338 N. Seneca Drive
Trinity, Alabama 35673
jamesdwhitt@bellsouth.net

/s/ Stephanie H. Mays
Stephanie H. Mays
Alabama Bar No. asb-9005-e68m
SMays@maynardcooper.com
MAYNARD COOPER & GALE P.C.
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, Alabama 35203
Telephone: (205) 254-1844
Facsimile: (205) 254-1999

Local Counsel for Plaintiff

Frederick T. Smith
Georgia Bar No. 657575
fsmith@seyfarth.com
Daniel P. Hart
Georgia Bar No. 141679
dhart@seyfarth.com
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E.
Suite 2500
Atlanta, Georgia 30309-3962
Telephone: (404) 885-1500
Facsimile: (404) 892-7056

Lead Counsel for Plaintiff

*Exhibit A*

### NON-DISCLOSURE/NON-COMPETITION/NON-SOLICITATION AGREEMENT

This Non-Disclosure/Non-Competition/Non-Solicitation Agreement ("Agreement") is made and entered into by and between Securitas Security Services USA, Inc. ("Securitas USA"), a Delaware corporation with its principal place of business in New Jersey, and _James Uchin_ ("Employee").

In consideration for Securitas USA's agreement to employ Employee, and in consideration for Employee's receipt and use of Securitas USA's confidential information and/or trade secrets, Employee acknowledges and agrees to the following:

### SECTION 1 – RECITALS

1.1     Employee acknowledges, agrees and understands that Securitas USA is engaged in the business of providing security services to an open market of clientele throughout the country and within the State of _AL_ .

1.2     Employee desires to be employed (or continue employment) with Securitas USA on an "at-will" basis. Employee agrees and understands that Securitas USA will provide Employee with compensation, training, experience, and exposure to Securitas USA's confidential information and that such represents valuable consideration for this Agreement.

1.3     Employee understands that the execution of this Agreement is a condition of employment and that Employee hereby agrees to the terms and conditions contained herein.

1.4     Employee agrees that Securitas USA has a valid and legitimate business interest in maintaining the confidentiality of Securitas USA's trade secrets and other confidential information, including, but not limited to, Securitas USA's client lists, potential client lists, marketing information, business methods, and training resources.  Employee agrees to not engage in activities that are detrimental to Securitas USA's business interests.

1.5     Employee acknowledges that Employee will have access to Securitas USA's confidential information and that the exposure and use of this confidential information will be necessary in order for Employee to excel in Employee's job. Employee further acknowledges that Employee will have access to and interaction with Securitas USA's current clients and potential clients.

### SECTION II – NON-COMPETITION/NON-SOLICITATION

2.1     Best Efforts/No Moonlighting: Employee agrees that, while employed with Securitas USA:
        a) Employee shall devote Employee's full attention, effort and energy to fulfilling Employee's job duties and responsibilities;
        b) Employee shall not engage in any activity or employment that competes with

1

Securitas USA's operations, or in any way conflicts or interferes with the performance of Employee's job duties and responsibilities; and

c) Employee shall not perform work or services (moonlight), for or with any other person or entity that provides security services. Employee agrees that working for any other person or entity that provides security services, while employed with Securitas USA, constitutes a conflict of interest and is grounds for immediate termination.

2.2     Non-Competition: The parties agree that Employee may be employed with other security companies after termination of Employee's employment with Securitas USA. However, because of Employee's receipt and use of confidential information as identified in paragraphs 1.4 and 3.1 of this Agreement, Employee agrees that, during Employee's employment, and for a period of one (1) year following Employee's last date of employment with Securitas USA, Employee will **not**:

a) provide security services, directly or indirectly, individually or for another entity, to any person, customer or client which Employee serviced during the last year of Employee's employment with Securitas USA; and/or

b) provide security services, directly or indirectly, individually or for another entity, to any person, customer or potential client within a fifty (50) mile radius of the office in which Employee was based during his/her employment with Securitas USA.

2.3     Non-Solicitation: Employee agrees that, during Employee's employment, and for one (1) year following Employee's last date of employment with Securitas USA USA, Employee will not:

a) engage in any conduct or communications, directly or indirectly, designed or intended to induce any Securitas USA customer/client or potential client that Employee serviced or solicited during the last year of Employee's employment with Securitas USA, to discontinue using Securitas USA's services or to employ the services of a security provider other than Securitas USA; and

b) engage in any conduct or communications, directly or indirectly, designed or intended to induce any Securitas USA customer/client or potential client that Employee serviced or solicited within a fifty (50) mile radius of the office in which Employee was based during his/her employment with Securitas USA to discontinue or to employ the services of a security provider other than Securitas USA; and

c) engage in any conduct or communications, directly or indirectly, designed or intended to induce any Securitas USA employee to terminate his or her employment with Securitas USA in order to compete with Securitas USA's business interests.

2.4     After Employee's termination from Securitas USA, Employee further agrees to refrain from maintaining a business address or telephone listing, within the fifty (50) mile radius of the office in which Employee was based during his/her employment with Securitas USA, for the purpose soliciting business in the

2

security industry.

## SECTION III – CONFIDENTIAL INFORMATION

3.1     <u>Non-Disclosure of Confidential Information/Trade Secrets/Securitas USA Property</u>: Employee agrees that the following materials are considered Securitas USA confidential property and may also constitute trade secrets: all customer and/or client lists, pricing models, business models, business plans and strategies, lists of sales leads, forms, notes, any computer/electronic-generated information, memoranda, records, price lists, leads, drawings, files, papers relating to Securitas USA's operations and methods of conducting business, designs, processes, methods of marketing, all training materials created by Securitas USA, all equipment and any other written information obtained by Employee from Securitas USA or from any officer or other employee of Securitas USA. Employee acknowledges and agrees that, during Employee's employment, Securitas USA will provide Employee access to and Employee will make use of Securitas USA's confidential information and/or trade secrets, as defined by the Uniform Trade Secrets Act. Employee agrees, in order for Securitas USA to protect its business interests, including goodwill, during Employee's employment and for a period of two (2) years after the termination of Employee's employment with Securitas USA:

a)      to never use any Securitas USA property in a manner that may undermine any of Securitas USA's business operations, and to maintain the confidentiality of all information designated as such, and/or designated as a trade secret;

b)      keep such information confidential and not use such confidential information and/or trade secrets to engage in activities in competition with Securitas USA; and

c)      to return all Securitas USA property to Securitas USA upon request, including, but not limited to, any and all documents reflecting confidential information and/or Securitas USA's trade secrets.

## SECTION IV – ADDITIONAL PROVISIONS

4.1     <u>Know-How</u>: Notwithstanding any other provision of this Agreement, nothing in this Agreement shall be deemed to prohibit Employee's post-employment use of Employee's general "know-how," acquired or enhanced, during Employee's employment with Securitas USA, as such term "know-how" is defined under applicable law, as long as such use does not require the use of Securitas USA's confidential information and/or trade secrets in violation of this Agreement.

4.2     <u>Injunctive Relief</u>: In view of the nature of Employee's employment and the confidential information and trade secrets which Employee receives and makes use of during Employee's employment, Employee agrees that Securitas USA would be irreparably harmed by any violation or threatened violation of this Agreement. Employee agrees that Securitas USA shall be entitled to a court-ordered injunction prohibiting Employee from any violation or threatened

3

violation of this Agreement, and any other remedies to which Securitas USA may be otherwise entitled. Employee agrees that adherence to this Agreement by Employee will not prevent Employee from gaining adequate employment after Employee's employment with Securitas USA ends.

4.3     Severability: If any term, provision or restriction contained in this Agreement is found to be unenforceable or invalid, such term, provision or restriction shall be modified to the minimum extent necessary in order to render it enforceable within the subject jurisdiction, consistent with the expressed objectives of the parties hereto, and the remaining provisions shall continue in full force and effect.

4.4     Indemnification: The parties agree that Securitas USA shall not be responsible for any liabilities or damages connected with non-compete obligations Employee may have with other organizations.

4.5     Reasonableness of Scope and Duration: Employee acknowledges, understands, and agrees to all of the provisions as outlined in this Agreement. Employee further acknowledges, understands, and agrees that the restrictions contained in this Agreement are reasonable in relation to Securitas USA's protectable interests. Employee shall not raise any argument or issue regarding the reasonableness of any of the provisions of this agreement and agrees that Employee has had sufficient time within which to consider this Agreement and has concluded that none of these provisions will unduly restrict Employee's ability to obtain or maintain a livelihood.

4.6     At-Will Employment: Employee understands that Employee's employment with Securitas USA is "at-will" and can be terminated at any time, with or without notice. Employee further understands and agrees that nothing in this Agreement changes Employee's "at-will" status of employment and that nothing in this Agreement shall be construed as conferring Employee with any additional rights, benefits, or compensation above and beyond that of an "at-will" employee with Securitas USA.

4.7     Applicability of Agreement: Employee agrees that the provisions contained in this Agreement shall apply without regard to whether Employee voluntarily or involuntarily terminates Employee's employment with Securitas USA.

4.8     Final Agreement: This Agreement supersedes any and all prior agreements or understandings between the parties regarding Employee's confidentiality, non-compete and non-solicitation obligations. This Agreement may not be amended orally, but only by a writing signed by both an authorized representative of Securitas USA and Employee.

4.9     This Agreement shall continue to be valid and enforceable as to any successor in interest to Securitas USA.

4.10    The laws of the State of _AL_ shall govern this Agreement.

4

I have read, understand, accept and agree to the provisions contained in this Agreement. I execute this Agreement knowingly and voluntarily.

_James Abbott_
Employee

Dated: _3-23-10_

Securitas Security Services USA, Inc.

_Curt Seal_

Dated: _3/23/10_

5

*Exhibit B*

# SEYFARTH
### ATTORNEYS SHAW LLP

1075 Peachtree Street N.E.

Suite 2500

Atlanta, GA  30309-3962

(404) 885-1500

fax (404) 892-7056

www.seyfarth.com

Writer's direct phone

Writer's e-mail

(404) 881-5433

dhart@seyfarth.com

BRUSSELS    WASHINGTON, D.C    SAN FRANCISCO    SACRAMENTO    NEW YORK    LOS ANGELES    HOUSTON    CHICAGO    BOSTON    ATLANTA

January 11, 2012

**PERSONAL AND CONFIDENTIAL**

**BY FEDERAL EXPRESS**

James Whitt
338 N. Seneca Drive
Trinity, Alabama  35673

> Re:     Your Non-Disclosure/Non-Competition/Non-Solicitation Agreement with
> Securitas Security Services USA, Inc.

Dear Mr. Whitt:

Please be advised that we represent your former employer, Securitas Security Services USA, Inc. ("Securitas").  The purpose of this letter is to remind you of your continuing contractual obligations to Securitas and demand that you immediately comply with them.

On March 23, 2010, you entered into a Non-Disclosure/Non-Competition/Non-Solicitation Agreement ("the Agreement") with Securitas, a copy of which is enclosed with this letter.  During the course of your employment with the Company, you received Securitas' confidential information and trade secrets.  In consideration for your employment with Securitas and for receiving the Company's confidential information and trade secrets, you promised that for a one-year period following the termination of your employment with Securitas you would not:

> ➢ Provide security services, directly or indirectly, individually or for another entity, to any person, customer or client which you serviced during the last year of your employment with Securitas;

> ➢ Provide security services, directly or indirectly, individually or for another entity, to any person, customer or potential client within a fifty (50) mile radius of the office in which you were based during your employment with Securitas;

14086113v.1

THIS LETTERHEAD IS PRINTED ON RECYCLED PAPER

SEYFARTH
ATTORNEYS SHAW LLP

➢ Engage in any conduct or communications, directly or indirectly, designed or intended to induce any Securitas customer/client or potential client that you serviced or solicited during the last year of your employment with Securitas, to discontinue using Securitas' services or to employ the services of a security provider other than Securitas;

➢ Engage in any conduct or communication, directly or indirectly, designed or intended to induce any Securitas customer/client or potential client that you serviced or solicited within a fifty (50) mile radius of the office in which you were based during your employment with Securitas to discontinue or to employ the services of a security provider other than Securitas;

➢ Engage in any conduct or communications, directly or indirectly, designed or intended to induce any Securitas employee to terminate his or her employment with Securitas in order to compete with Securitas' business interests.

You also agreed to refrain from using or disclosing Securitas's confidential information and trade secrets, to return all Securitas property in your possession, and to refrain from maintaining a business address or telephone listing within the fifty (50) mile radius of the office in which you were based during your employment with Securitas, for the purpose of soliciting business in the security industry.

In addition to these obligations in the Agreement, you also have a separate legal obligation to refrain from using or disclosing any confidential information of Securitas that is subject to protection under the Alabama Uniform Trade Secrets Act, Ala. Code. § 8-27-1 *et seq.*

It has come to Securitas' attention that you are currently employed by Security Management, which is one of Securitas' direct competitors, within 50 miles of Securitas's office in Huntsville, Alabama, where you were based during your employment with Securitas. Your employment with Security Management within a 50-mile radius of Securitas' Huntsville office constitutes a breach of your obligations under the Agreement. Indeed, Securitas recently has learned that you are soliciting Securitas accounts that you handled on behalf of Securitas during your employment with Securitas and that you are soliciting Securitas employees to terminate their employment with Securitas in order to work for Security Management.

This letter constitutes a formal demand that you immediately cease and desist such activities, including solicitation of Securitas' customers or employees and any use or disclosure of Securitas' confidential information. Please be advised that Securitas will take action, if necessary, to enforce its contractual rights under the Agreement. If we do not hear from you by January 20, 2012, Securitas will conclude that you intend to continue violating the terms of the Agreement and, therefore, Securitas will be forced to seek legal recourse to the fullest extent permitted by law, including but not limited to filing a lawsuit against you to enforce the terms of the Agreement. In the event that Securitas is forced to take legal action against you, Securitas

14086113v.1



may seek an injunction against you and the recovery of any and all monetary damages available to it, including its attorneys' fees.

If you are represented by legal counsel, please forward this letter to your attorney so that he or she can contact me directly. If you have not retained counsel, please contact me to discuss this matter further.

Very truly yours,

SEYFARTH SHAW LLP

*Daniel P. Hart*

Daniel P. Hart

DPH/ech

cc:     Frederick T. Smith

14086113v.1

THIS LETTERHEAD IS PRINTED ON RECYCLED STOCK

## NON-DISCLOSURE/NON-COMPETITION/NON-SOLICITATION AGREEMENT

This Non-Disclosure/Non-Competition/Non-Solicitation Agreement ("Agreement") is made and entered into by and between Securitas Security Services USA, Inc. ("Securitas USA"), a Delaware corporation with its principal place of business in New Jersey, and *James Whit* ("Employee").

In consideration for Securitas USA's agreement to employ Employee, and in consideration for Employee's receipt and use of Securitas USA's confidential information and/or trade secrets, Employee acknowledges and agrees to the following:

### SECTION 1 – RECITALS

1.1    Employee acknowledges, agrees and understands that Securitas USA is engaged in the business of providing security services to an open market of clientele throughout the country and within the State of _AL_ .

1.2    Employee desires to be employed (or continue employment) with Securitas USA on an "at-will" basis. Employee agrees and understands that Securitas USA will provide Employee with compensation, training, experience, and exposure to Securitas USA's confidential information and that such represents valuable consideration for this Agreement.

1.3    Employee understands that the execution of this Agreement is a condition of employment and that Employee hereby agrees to the terms and conditions contained herein.

1.4    Employee agrees that Securitas USA has a valid and legitimate business interest in maintaining the confidentiality of Securitas USA's trade secrets and other confidential information, including, but not limited to, Securitas USA's client lists, potential client lists, marketing information, business methods, and training resources. Employee agrees to not engage in activities that are detrimental to Securitas USA's business interests.

1.5    Employee acknowledges that Employee will have access to Securitas USA's confidential information and that the exposure and use of this confidential information will be necessary in order for Employee to excel in Employee's job. Employee further acknowledges that Employee will have access to and interaction with Securitas USA's current clients and potential clients.

### SECTION II – NON-COMPETITION/NON-SOLICITATION

2.1    Best Efforts/No Moonlighting: Employee agrees that, while employed with Securitas USA:

    a) Employee shall devote Employee's full attention, effort and energy to fulfilling Employee's job duties and responsibilities;

    b) Employee shall not engage in any activity or employment that competes with

1

Securitas USA's operations, or in any way conflicts or interferes with the performance of Employee's job duties and responsibilities; and

c) Employee shall not perform work or services (moonlight), for or with any other person or entity that provides security services. Employee agrees that working for any other person or entity that provides security services, while employed with Securitas USA, constitutes a conflict of interest and is grounds for immediate termination.

2.2    Non-Competition: The parties agree that Employee may be employed with other security companies after termination of Employee's employment with Securitas USA. However, because of Employee's receipt and use of confidential information as identified in paragraphs 1.4 and 3.1 of this Agreement, Employee agrees that, during Employee's employment, and for a period of one (1) year following Employee's last date of employment with Securitas USA, Employee will not:

a) provide security services, directly or indirectly, individually or for another entity, to any person, customer or client which Employee serviced during the last year of Employee's employment with Securitas USA; and/or

b) provide security services, directly or indirectly, individually or for another entity, to any person, customer or potential client within a fifty (50) mile radius of the office in which Employee was based during his/her employment with Securitas USA.

2.3    Non-Solicitation: Employee agrees that, during Employee's employment, and for one (1) year following Employee's last date of employment with Securitas USA, Employee will not:

a) engage in any conduct or communications, directly or indirectly, designed or intended to induce any Securitas USA customer/client or potential client that Employee serviced or solicited during the last year of Employee's employment with Securitas USA, to discontinue using Securitas USA's services or to employ the services of a security provider other than Securitas USA; and

b) engage in any conduct or communications, directly or indirectly, designed or intended to induce any Securitas USA customer/client or potential client that Employee serviced or solicited within a fifty (50) mile radius of the office in which Employee was based during his/her employment with Securitas USA to discontinue or to employ the services of a security provider other than Securitas USA; and

c) engage in any conduct or communications, directly or indirectly, designed or intended to induce any Securitas USA employee to terminate his or her employment with Securitas USA in order to compete with Securitas USA's business interests.

2.4    After Employee's termination from Securitas USA, Employee further agrees to refrain from maintaining a business address or telephone listing, within the fifty (50) mile radius of the office in which Employee was based during his/her employment with Securitas USA, for the purpose soliciting business in the

2

security industry.

## SECTION III -- CONFIDENTIAL INFORMATION

3.1     Non-Disclosure of Confidential Information/Trade Secrets/Securitas USA Property: Employee agrees that the following materials are considered Securitas USA confidential property and may also constitute trade secrets: all customer and/or client lists, pricing models, business models, business plans and strategies, lists of sales leads, forms, notes, any computer/electronic-generated information, memoranda, records, price lists, leads, drawings, files, papers relating to Securitas USA's operations and methods of conducting business, designs, processes, methods of marketing, all training materials created by Securitas USA, all equipment and any other written information obtained by Employee from Securitas USA or from any officer or other employee of Securitas USA. Employee acknowledges and agrees that, during Employee's employment, Securitas USA will provide Employee access to and Employee will make use of Securitas USA's confidential information and/or trade secrets, as defined by the Uniform Trade Secrets Act. Employee agrees, in order for Securitas USA to protect its business interests, including goodwill, during Employee's employment and for a period of two (2) years after the termination of Employee's employment with Securitas USA:

a)     to never use any Securitas USA property in a manner that may undermine any of Securitas USA's business operations, and to maintain the confidentiality of all information designated as such, and/or designated as a trade secret;

b)     keep such information confidential and not use such confidential information and/or trade secrets to engage in activities in competition with Securitas USA; and

c)     to return all Securitas USA property to Securitas USA upon request, including, but not limited to, any and all documents reflecting confidential information and/or Securitas USA's trade secrets.

## SECTION IV -- ADDITIONAL PROVISIONS

4.1     Know-How: Notwithstanding any other provision of this Agreement, nothing in this Agreement shall be deemed to prohibit Employee's post-employment use of Employee's general "know-how," acquired or enhanced, during Employee's employment with Securitas USA, as such term "know-how" is defined under applicable law, as long as such use does not require the use of Securitas USA's confidential information and/or trade secrets in violation of this Agreement.

4.2     Injunctive Relief: In view of the nature of Employee's employment and the confidential information and trade secrets which Employee receives and makes use of during Employee's employment, Employee agrees that Securitas USA would be irreparably harmed by any violation or threatened violation of this Agreement. Employee agrees that Securitas USA shall be entitled to a court-ordered injunction prohibiting Employee from any violation or threatened

3

violation of this Agreement, and any other remedies to which Securitas USA may be otherwise entitled. Employee agrees that adherence to this Agreement by Employee will not prevent Employee from gaining adequate employment after Employee's employment with Securitas USA ends.

4.3     Severability: If any term, provision or restriction contained in this Agreement is found to be unenforceable or invalid, such term, provision or restriction shall be modified to the minimum extent necessary in order to render it enforceable within the subject jurisdiction, consistent with the expressed objectives of the parties hereto, and the remaining provisions shall continue in full force and effect.

4.4     Indemnification: The parties agree that Securitas USA shall not be responsible for any liabilities or damages connected with non-compete obligations Employee may have with other organizations.

4.5     Reasonableness of Scope and Duration: Employee acknowledges, understands, and agrees to all of the provisions as outlined in this Agreement. Employee further acknowledges, understands, and agrees that the restrictions contained in this Agreement are reasonable in relation to Securitas USA's protectable interests. Employee shall not raise any argument or issue regarding the reasonableness of any of the provisions of this agreement and agrees that Employee has had sufficient time within which to consider this Agreement and has concluded that none of these provisions will unduly restrict Employee's ability to obtain or maintain a livelihood.

4.6     At-Will Employment: Employee understands that Employee's employment with Securitas USA is "at-will" and can be terminated at any time, with or without notice. Employee further understands and agrees that nothing in this Agreement changes Employee's "at-will" status of employment and that nothing in this Agreement shall be construed as conferring Employee with any additional rights, benefits, or compensation above and beyond that of an "at-will" employee with Securitas USA.

4.7     Applicability of Agreement: Employee agrees that the provisions contained in this Agreement shall apply without regard to whether Employee voluntarily or involuntarily terminates Employee's employment with Securitas USA.

4.8     Final Agreement: This Agreement supersedes any and all prior agreements or understandings between the parties regarding Employee's confidentiality, non-compete and non-solicitation obligations. This Agreement may not be amended orally, but only by a writing signed by both an authorized representative of Securitas USA and Employee.

4.9     This Agreement shall continue to be valid and enforceable as to any successor in interest to Securitas USA.

4.10    The laws of the State of _AL_ shall govern this Agreement.

4

I have read, understand, accept and agree to the provisions contained in this Agreement. I execute this Agreement knowingly and voluntarily.

_James White_
Employee

Dated: _3-23-10_

Securitas Security Services USA, Inc.

_Curt Seal_

Dated: _3/23/10_

*Exhibit C*

Hart, Daniel P

**From:** JAMES D WHITT [jamesdwhitt@bellsouth.net]
**Sent:** Monday, January 16, 2012 1:56 PM
**To:** Hart, Daniel P
**Subject:** Securitas Security Services USA, Inc.

Mr. Hart,

I have received your letter dated January 11, 2012.

To the best of my knowledge I have not violated any valid contractual obligation I have to Securitas. I am not currently employed by Security Management. Therefore the allegations contained in your letter associated with my presumed employment with Security Management are untrue.

If you have additional inquiries regarding this matter, please contact me.

James Whitt

# *Exhibit D*

Hart, Daniel P

| | |
|---|---|
| **From:** | Hart, Daniel P |
| **Sent:** | Thursday, January 19, 2012 4:03 PM |
| **To:** | 'JAMES D WHITT' |
| **Cc:** | Smith, Fritz |

**Subject:** RE: Securitas Security Services USA, Inc.

Mr. Whitt:

Thank you for your prompt response to my letter.  Contrary to your representations in the e-mail below, we have confirmed that you previously were employed by Security Management of South Carolina in breach of your obligations to Securitas Security Services USA, Inc.  Although we understand that now you are no longer employed by Security Management, Securitas has learned that you obtained employment with Security Management -- a direct competitor of Securitas -- by failing to disclose your contractual obligations to Securitas.

In light of your representation that you are not in breach of your obligations to Securitas, please provide answers to the following questions so that Securitas can confirm whether your representations are true:

(1) Who is your current employer?

(2) How long have you been employed by your current employer?

(3) Were you employed by Security Management when Security Management took over the security service for the Yutaka facility in Cullman, AL?

(4) Since the termination of your employment with Securitas, have you had any contact, either directly or indirectly, with Heat Transfer Products?  If yes, please indicate the date of your contact and the name of the person(s) at Heat Transfer Products with whom you had contact.

Please provide truthful responses to these inquiries by January 24, 2012.  If we do not receive answers to these inquiries by that date, or if you provide responses that we discover to be false, Securitas will interpret your silence or misrepresentations as a refusal to engage in good-faith efforts to resolve Securitas's concerns about your past and present competitive activities.  In that event, Securitas will have no choice but to initiate legal action against you.

Please contact me by telephone if you have any questions.  If you are represented by counsel, please forward this communication to your attorney so that he or she can communicate directly with me.

**Daniel P. Hart | Seyfarth Shaw LLP**
1075 Peachtree Street, N.E. | Suite 2500
Atlanta, GA 30309-3962
404.881.5433 Direct Phone | 404.724.1633 Direct Fax
404.457.6227 Cell Phone
dhart@seyfarth.com | www.seyfarth.com

---

**From:** JAMES D WHITT [mailto:jamesdwhitt@bellsouth.net]
**Sent:** Monday, January 16, 2012 1:56 PM
**To:** Hart, Daniel P
**Subject:** Securitas Security Services USA, Inc.

Mr. Hart,

2/27/2012

I have received your letter dated January 11, 2012.


To the best of my knowledge I have not violated any valid contractual obligation I have to Securitas. I am not currently employed by Security Management. Therefore the allegations contained in your letter associated with my presumed employment with Security Management are untrue.

If you have additional inquiries regarding this matter, please contact me.


James Whitt


2/27/2012

*Exhibit E*

Hart, Daniel P

**From:** JAMES D WHITT [jamesdwhitt@bellsouth.net]
**Sent:** Monday, January 23, 2012 3:07 PM
**To:** Hart, Daniel P
**Subject:** Re: Securitas Security Services USA, Inc.

Mr. Hart,

I hope you are doing well.

When I left Securitas, I did so for the benefit of my family, which includes three small children. Security Management offered me substantially more pay and I believed it would be imprudent to refuse their offer. Especially since I believed that Securitas completely undervalued my efforts and that my pay was not commensurate with my work.

When I left, I honestly did not realize the legitimacy of the non-compete agreement. Well after I began employment with Securitas, they forwarded the agreement to me via an email and simply told me to sign it. I was not consulted by anyone from management and I did not fully understand the effect it would have on me or my employment. I simply done what I was asked to do.

My belief that the contract was inconsequential was compounded by the fact that Security Management was aware of the contract and showed it little regard. I believed that surely they were more sophisticated than I in determining whether or not I should be employed.

Security Management took over the security service for the Yutaka facility in Cullman during the time of my brief employment. However, I was under the guidance of management during that time and it was their sole decision to move forward and secure the contract. Its my understanding that Security Management initially approached Yutaka from their facility in South Carolina.

The following are answers to your questions:

1) I am currently unemployed and have been since the first of December. I can produce the unemployment benefits 1099 if necessary. I am not currently seeking employment with any other security service providers.

2) n/a

3) yes

4) I spoke with Johnny Gamble a few nights ago, regarding Alabama basketball, and we often see each other at Alabama Sporting Events.

Since I am unemployed, it would be difficult for me to hire an attorney to defend a lawsuit and I would like to avoid that if at all possible. I'm willing to work with you in any way necessary and hope to resolve this issue as quickly as possible. If there is anything else you would like to know

or discuss please do not hesitate to contact me.

James Whitt

---

**From:** "Hart, Daniel P" <DHart@seyfarth.com>
**To:** JAMES D WHITT <jamesdwhitt@bellsouth.net>
**Cc:** "Smith, Fritz" <fsmith@seyfarth.com>
**Sent:** Thu, January 19, 2012 3:02:38 PM
**Subject:** RE: Securitas Security Services USA, Inc.

Mr. Whitt:

Thank you for your prompt response to my letter. Contrary to your representations in the e-mail below, we have confirmed that you previously were employed by Security Management of South Carolina in breach of your obligations to Securitas Security Services USA, Inc. Although we understand that now you are no longer employed by Security Management, Securitas has learned that you obtained employment with Security Management -- a direct competitor of Securitas -- by failing to disclose your contractual obligations to Securitas.

In light of your representation that you are not in breach of your obligations to Securitas, please provide answers to the following questions so that Securitas can confirm whether your representations are true:

(1) Who is your current employer?

(2) How long have you been employed by your current employer?

(3) Were you employed by Security Management when Security Management took over the security service for the Yutaka facility in Cullman , AL ?

(4) Since the termination of your employment with Securitas, have you had any contact, either directly or indirectly, with Heat Transfer Products? If yes, please indicate the date of your contact and the name of the person(s) at Heat Transfer Products with whom you had contact.

Please provide truthful responses to these inquiries by January 24, 2012. If we do not receive answers to these inquiries by that date, or if you provide responses that we discover to be false, Securitas will interpret your silence or misrepresentations as a refusal to engage in good-faith efforts to resolve Securitas's concerns about your past and present competitive activities. In that event, Securitas will have no choice but to initiate legal action against you.

Please contact me by telephone if you have any questions. If you are represented by counsel, please forward this communication to your attorney so that he or she can communicate directly with me.

**Daniel P. Hart | Seyfarth Shaw LLP**
1075 Peachtree Street, N.E. | Suite 2500
Atlanta, GA 30309-3962
404.881.5433 Direct Phone | 404.724.1633 Direct Fax
404.457.6227 Cell Phone
dhart@seyfarth.com | www.seyfarth.com

---

**From:** JAMES D WHITT [mailto:jamesdwhitt@bellsouth.net]
**Sent:** Monday, January 16, 2012 1:56 PM
**To:** Hart, Daniel P
**Subject:** Securitas Security Services USA, Inc.

2/27/2012

Mr. Hart,

I have received your letter dated January 11, 2012.

To the best of my knowledge I have not violated any valid contractual obligation I have to Securitas. I am not currently employed by Security Management. Therefore the allegations contained in your letter associated with my presumed employment with Security Management are untrue.

If you have additional inquiries regarding this matter, please contact me.

James Whitt

Any tax information or written tax advice contained herein (including any attachment
(The foregoing legend has been affixed pursuant to U.S. Treasury Regulations governi

The information contained in this transmission is attorney privileged and/or confide
If the reader of this message is not the intended recipient, you are hereby notified

2/27/2012

*Exhibit F*

Hart, Daniel P

**From:** Hart, Daniel P
**Sent:** Tuesday, January 31, 2012 10:31 AM
**To:** 'JAMES D WHITT'
**Cc:** Smith, Fritz
**Subject:** RE: Securitas Security Services USA, Inc.

Mr. Whitt,

Thank you for your reply. In light of your responses, we need additional information to assess the accuracy of the information that you have provided. Please answer the additional questions below:

(1) Do you have any letters, e-mails, or any other documents that demonstrate your representation that Security Management was aware of your agreement with Securitas but showed it little regard? If so, please provide them.

(2) Have you at any time since your affiliation with Security Management ended, had any affiliation whatsoever -- either as an employee, contractor, consultant, owner, or investor -- with any company that provides services in the security industry? If yes, please name the company and your affiliation with it.

(3) Did you manage the Yutaka account during your employment with Security Management?

(4) Did you have any communications with anyone at Yutaka during your employment with Security Management? If yes, please list everyone at Yutaka with whom you had any communications and describe the subject of the communications.

(5) Please provide the name of the company that is currently providing security services to Heat Transfer Products.

(6) Are you currently performing any services for Heat Transfer Products? If yes, please describe the nature of the services that you are providing.

(7) Have you had any discussions with Mr. Gamble regarding security services? If yes, please provide the date of the communication and describe the communication.

We need responses to these questions by no later than Friday, February 3. I am sure that you can appreciate the gravity with which Securitas regards this situation. Therefore, I must remind you of your continuing obligations to Securitas. To the extent that you are currently in violation of your obligations to Securitas, Securitas demands that you immediately cease and desist from any and all activities that violate your obligations.

As I previously noted, please contact me by telephone if you have any questions. If you are represented by counsel, please forward this communication to your attorney so that he or she can communicate directly with me.

**Daniel P. Hart | Seyfarth Shaw LLP**
1075 Peachtree Street, N.E. | Suite 2500
Atlanta, GA 30309-3962
404.881.5433 Direct Phone | 404.724.1633 Direct Fax
404.457.6227 Cell Phone
dhart@seyfarth.com | www.seyfarth.com

---

**From:** JAMES D WHITT [mailto:jamesdwhitt@bellsouth.net]

2/27/2012

**Sent:** Monday, January 23, 2012 3:07 PM
**To:** Hart, Daniel P
**Subject:** Re: Securitas Security Services USA, Inc.

Mr. Hart,

I hope you are doing well.

When I left Securitas, I did so for the benefit of my family, which includes three small children. Security Management offered me substantially more pay and I believed it would be imprudent to refuse their offer. Especially since I believed that Securitas completely undervalued my efforts and that my pay was not commensurate with my work.

When I left, I honestly did not realize the legitimacy of the non-compete agreement. Well after I began employment with Securitas, they forwarded the agreement to me via an email and simply told me to sign it. I was not consulted by anyone from management and I did not fully understand the effect it would have on me or my employment. I simply done what I was asked to do.

My belief that the contract was inconsequential was compounded by the fact that Security Management was aware of the contract and showed it little regard. I believed that surely they were more sophisticated than I in determining whether or not I should be employed.

Security Management took over the security service for the Yutaka facility in Cullman during the time of my brief employment. However, I was under the guidance of management during that time and it was their sole decision to move forward and secure the contract. Its my understanding that Security Management initially approached Yutaka from their facility in South Carolina.

The following are answers to your questions:

1) I am currently unemployed and have been since the first of December. I can produce the unemployment benefits 1099 if necessary. I am not currently seeking employment with any other security service providers.

2) n/a

3) yes

4) I spoke with Johnny Gamble a few nights ago, regarding Alabama basketball, and we often see each other at Alabama Sporting Events.

Since I am unemployed, it would be difficult for me to hire an attorney to defend a lawsuit and I would like to avoid that if at all possible. I'm willing to work with you in any way necessary and hope to resolve this issue as quickly as possible. If there is anything else you would like to know or discuss please do not hesitate to contact me.

James Whitt

---

**From:** "Hart, Daniel P" <DHart@seyfarth.com>
**To:** JAMES D WHITT <jamesdwhitt@bellsouth.net>
**Cc:** "Smith, Fritz" <fsmith@seyfarth.com>
**Sent:** Thu, January 19, 2012 3:02:38 PM
**Subject:** RE: Securitas Security Services USA, Inc.

Mr. Whitt:

Thank you for your prompt response to my letter.  Contrary to your representations in the e-mail below, we have confirmed that you previously were employed by Security Management of South Carolina in breach of your obligations to Securitas Security Services USA, Inc.  Although we understand that now you are no longer employed by Security Management, Securitas has learned that you obtained employment with Security Management -- a direct competitor of Securitas -- by failing to disclose your contractual obligations to Securitas.

In light of your representation that you are not in breach of your obligations to Securitas, please provide answers to the following questions so that Securitas can confirm whether your representations are true:

(1) Who is your current employer?

(2) How long have you been employed by your current employer?

(3) Were you employed by Security Management when Security Management took over the security service for the Yutaka facility in Cullman , AL ?

(4) Since the termination of your employment with Securitas, have you had any contact, either directly or indirectly, with Heat Transfer Products?  If yes, please indicate the date of your contact and the name of the person(s) at Heat Transfer Products with whom you had contact.

Please provide truthful responses to these inquiries by January 24, 2012.  If we do not receive answers to these inquiries by that date, or if you provide responses that we discover to be false, Securitas will interpret your silence or misrepresentations as a refusal to engage in good-faith efforts to resolve Securitas's concerns about your past and present competitive activities.  In that event, Securitas will have no choice but to initiate legal action against you.

Please contact me by telephone if you have any questions.  If you are represented by counsel, please forward this communication to your attorney so that he or she can communicate directly with me.

**Daniel P. Hart | Seyfarth Shaw LLP**
1075 Peachtree Street, N.E. | Suite 2500
Atlanta, GA 30309-3962
404.881.5433 Direct Phone | 404.724.1633 Direct Fax
404.457.6227 Cell Phone
dhart@seyfarth.com | www.seyfarth.com

---

**From:** JAMES D WHITT [mailto:jamesdwhitt@bellsouth.net]
**Sent:** Monday, January 16, 2012 1:56 PM
**To:** Hart, Daniel P
**Subject:** Securitas Security Services USA, Inc.

Mr. Hart,

I have received your letter dated January 11, 2012.

2/27/2012

To the best of my knowledge I have not violated any valid contractual obligation I have to Securitas. I am not currently employed by Security Management. Therefore the allegations contained in your letter associated with my presumed employment with Security Management are untrue.

If you have additional inquiries regarding this matter, please contact me.

James Whitt

Any tax information or written tax advice contained herein (including any attachment
(The foregoing legend has been affixed pursuant to U.S. Treasury Regulations governi

The information contained in this transmission is attorney privileged and/or confide
If the reader of this message is not the intended recipient, you are hereby notified

# *Exhibit G*

Hart, Daniel P

**From:**   JAMES D WHITT [jamesdwhitt@bellsouth.net]
**Sent:**   Thursday, February 02, 2012 3:13 PM
**To:**   Hart, Daniel P
**Subject:** Re: Securitas Security Services USA, Inc.

Mr. Hart,

I hope your day is going well.

As requested:

1. All of my Security Management/Securitas emails were deleted and I am not in possession of any other written correspondence demonstrating their knowledge of the agreement and their position on the matter. However, I assure you they knew and this was discussed numerous times. I would bet that they still have the copy of the agreement in their possession that I forwarded over to them when I was first approached about employment.

2. None

3. No, it was managed by Robin Canfield.

4. No this was handled by Doug McIntyre and their sales individual, Scott Smith.

5. I don't know.

6. None

7. We briefly discussed the direction given to him from above to change services due to several instances of negligent service provided by Securitas. Securitas had failed to provide adequate personnel or security direction for their facility.
Here is what I know:

Yutaka

Securitas had an officer that brought a gun on site, this site was an unarmed site. This officer was showing off his gun to a Yutaka employee and the gun went off and shot a hole in the roof of the facility. Yutaka requested that this officer be instantly removed and Securitas delayed the removal of this officer, they wanted to investigate before his removal. The facility decided that since Securitas could not act in their best interest that they needed a change of security provider. If Securitas would have handled this situation correctly and promptly, they would still have this contract today. They did end up placing this officer at another site where another incident occurred and only then did they decide to end his employment.

Heat Transfer Products Group

Securitas removed an officer from the site without understanding his value within the facility or with even understanding their roles within the facility. They replaced this officer with an officer who had no training and who's appearance and customer service skills were non existent. They did not communicate with their client or they would have understood his value and even after his

2/27/2012

removal, they would have instantly known of the mistake of placing this officer on their site, if they would have taken the time to follow up on the new officer's training and status within the facility. Their main task is access control and this individual was placed on day shift, their busiest shift and only waved to anyone that wanted to enter the plant including upper management that ultimately decided that their service was of no value to them. Again, if they had at in the very least communicated with the plant and with their issues, they would be there today as well.

Since I no longer work for Securitas *or* Security Management, I would very much like to move past this part of my life. I understand that Securitas is currently experiencing a decline in business. However, this is due to a decline in the quality of their service and certainly can not be attributed to any acts on my behalf. This is my 3rd response to your inquiries and I am willing to answer subsequent questions which may arise, however, I believe Securitas's efforts to improve their business would be better spent elsewhere.

If there are any additional questions or concerns you would like to discuss please do no hesitate to contact me.

James Whitt

---

**From:** "Hart, Daniel P" <DHart@seyfarth.com>
**To:** JAMES D WHITT <jamesdwhitt@bellsouth.net>
**Cc:** "Smith, Fritz" <fsmith@seyfarth.com>
**Sent:** Tue, January 31, 2012 9:31:16 AM
**Subject:** RE: Securitas Security Services USA, Inc.

Mr. Whitt,

Thank you for your reply.  In light of your responses, we need additional information to assess the accuracy of the information that you have provided.  Please answer the additional questions below:

(1) Do you have any letters, e-mails, or any other documents that demonstrate your representation that Security Management was aware of your agreement with Securitas but showed it little regard?  If so, please provide them.

(2) Have you at any time since your affiliation with Security Management ended, had any affiliation whatsoever – either as an employee, contractor, consultant, owner, or investor – with any company that provides services in the security industry?  If yes, please name the company and your affiliation with it.

(3) Did you manage the Yutaka account during your employment with Security Management?

(4) Did you have any communications with anyone at Yutaka during your employment with Security Management?  If yes, please list everyone at Yutaka with whom you had any communications and describe the subject of the communications.

(5) Please provide the name of the company that is currently providing security services to Heat Transfer Products.

(6) Are you currently performing any services for Heat Transfer Products?  If yes, please describe the nature of the services that you are providing.

(7) Have you had any discussions with Mr. Gamble regarding security services?  If yes, please provide the date of the communication and describe the communication.

2/27/2012

We need responses to these questions by no later than Friday, February 3. I am sure that you can appreciate the gravity with which Securitas regards this situation. Therefore, I must remind you of your continuing obligations to Securitas. To the extent that you are currently in violation of your obligations to Securitas, Securitas demands that you immediately cease and desist from any and all activities that violate your obligations.

As I previously noted, please contact me by telephone if you have any questions. If you are represented by counsel, please forward this communication to your attorney so that he or she can communicate directly with me.

**Daniel P. Hart | Seyfarth Shaw LLP**
1075 Peachtree Street, N.E. | Suite 2500
Atlanta, GA 30309-3962
404.881.5433 Direct Phone | 404.724.1633 Direct Fax
404.457.6227 Cell Phone
dhart@seyfarth.com | www.seyfarth.com

---

**From:** JAMES D WHITT [mailto:jamesdwhitt@bellsouth.net]
**Sent:** Monday, January 23, 2012 3:07 PM
**To:** Hart, Daniel P
**Subject:** Re: Securitas Security Services USA, Inc.

Mr. Hart,

I hope you are doing well.

When I left Securitas, I did so for the benefit of my family, which includes three small children. Security Management offered me substantially more pay and I believed it would be imprudent to refuse their offer. Especially since I believed that Securitas completely undervalued my efforts and that my pay was not commensurate with my work.

When I left, I honestly did not realize the legitimacy of the non-compete agreement. Well after I began employment with Securitas, they forwarded the agreement to me via an email and simply told me to sign it. I was not consulted by anyone from management and I did not fully understand the effect it would have on me or my employment. I simply done what I was asked to do.

My belief that the contract was inconsequential was compounded by the fact that Security Management was aware of the contract and showed it little regard. I believed that surely they were more sophisticated than I in determining whether or not I should be employed.

Security Management took over the security service for the Yutaka facility in Cullman during the time of my brief employment. However, I was under the guidance of management during that time and it was their sole decision to move forward and secure the contract. Its my understanding that Security Management initially approached Yutaka from their facility in South Carolina.

The following are answers to your questions:

1) I am currently unemployed and have been since the first of December. I can produce the unemployment benefits 1099 if necessary. I am not currently seeking employment with any other security service providers.

2) n/a

2/27/2012

3) yes

4) I spoke with Johnny Gamble a few nights ago, regarding Alabama basketball, and we often see each other at Alabama Sporting Events.

Since I am unemployed, it would be difficult for me to hire an attorney to defend a lawsuit and I would like to avoid that if at all possible. I'm willing to work with you in any way necessary and hope to resolve this issue as quickly as possible. If there is anything else you would like to know or discuss please do not hesitate to contact me.

James Whitt

---

**From:** "Hart, Daniel P" <DHart@seyfarth.com>
**To:** JAMES D WHITT <jamesdwhitt@bellsouth.net>
**Cc:** "Smith, Fritz" <fsmith@seyfarth.com>
**Sent:** Thu, January 19, 2012 3:02:38 PM
**Subject:** RE: Securitas Security Services USA, Inc.

Mr. Whitt:

Thank you for your prompt response to my letter.  Contrary to your representations in the e-mail below, we have confirmed that you previously were employed by Security Management of South Carolina in breach of your obligations to Securitas Security Services USA, Inc.  Although we understand that now you are no longer employed by Security Management, Securitas has learned that you obtained employment with Security Management -- a direct competitor of Securitas -- by failing to disclose your contractual obligations to Securitas.

In light of your representation that you are not in breach of your obligations to Securitas, please provide answers to the following questions so that Securitas can confirm whether your representations are true:

(1) Who is your current employer?

(2) How long have you been employed by your current employer?

(3) Were you employed by Security Management when Security Management took over the security service for the Yutaka facility in Cullman , AL ?

(4) Since the termination of your employment with Securitas, have you had any contact, either directly or indirectly, with Heat Transfer Products?  If yes, please indicate the date of your contact and the name of the person(s) at Heat Transfer Products with whom you had contact.

Please provide truthful responses to these inquiries by January 24, 2012.  If we do not receive answers to these inquiries by that date, or if you provide responses that we discover to be false, Securitas will interpret your silence or misrepresentations as a refusal to engage in good-faith efforts to resolve Securitas's concerns about your past and present competitive activities.  In that event, Securitas will have no choice but to initiate legal action against you.

Please contact me by telephone if you have any questions.  If you are represented by counsel, please forward this communication to your attorney so that he or she can communicate directly with me.

**Daniel P. Hart | Seyfarth Shaw LLP**
1075 Peachtree Street, N.E. | Suite 2500

2/27/2012

Atlanta, GA 30309-3962
404.881.5433 Direct Phone | 404.724.1633 Direct Fax
404.457.6227 Cell Phone
dhart@seyfarth.com | www.seyfarth.com

---

**From:** JAMES D WHITT [mailto:jamesdwhitt@bellsouth.net]
**Sent:** Monday, January 16, 2012 1:56 PM
**To:** Hart, Daniel P
**Subject:** Securitas Security Services USA, Inc.

Mr. Hart,

I have received your letter dated January 11, 2012.

To the best of my knowledge I have not violated any valid contractual obligation I have to Securitas. I am not currently employed by Security Management. Therefore the allegations contained in your letter associated with my presumed employment with Security Management are untrue.

If you have additional inquiries regarding this matter, please contact me.

James Whitt

Any tax information or written tax advice contained herein (including any attachment
(The foregoing legend has been affixed pursuant to U.S. Treasury Regulations governi

The information contained in this transmission is attorney privileged and/or confide
If the reader of this message is not the intended recipient, you are hereby notifie

Any tax information or written tax advice contained herein (including any attachment
(The foregoing legend has been affixed pursuant to U.S. Treasury Regulations governi

The information contained in this transmission is attorney privileged and/or confide
If the reader of this message is not the intended recipient, you are hereby notifie

2/27/2012